BELL & HOWELL COMPANY, CHARLES E. MERRILL PUBLISHING DIVISION, APPELLANT, *v.* LIMBACH, TAX COMMISSIONER, APPELLEE.

(No. 83AP-1219—Decided July 10, 1984.)

*Baker & Hostetler* and *Kiehner Johnson,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *James C. Sauer,* for appellee.

*Stanley J. Bowers,* urging reversal for *amicus curiae* Printing Industry of Ohio.

*Gingher & Christensen, Paul R. Gingher* and *Malcolm L. Miller,* urging reversal for *amicus curiae* Ohio Newspaper Association.

NORRIS, J. Appellant, Charles E. Merrill Publishing Division ("Merrill"), appeals from an order of the Board of Tax Appeals ("BTA") which affirmed an assessment by the Tax Commissioner of Ohio of sales and use taxes levied upon tangible personal property purchased by Merrill in connection with its business of producing textbooks for sale. The items taxed included typesetting, reproduction proofs, color separations, artwork, photographs, and printing plates. Tax was not assessed against payments by Merrill for printing, collating, binding, and purchase of paper.

The evidence before the board established that Merrill obtained manuscripts either from members of its staff or outside writers; that the manuscripts were edited in-house; that the edited material was sent to a typesetter to be cast into type; that "galley proofs" were taken from this type and returned to Merrill's editors who made corrections and allotted space to insert artwork; that page layouts and designs were determined by staff editors and artists; that artwork and photographs were procured either from outside or in-house sources; that the marked galley proofs were returned to the typesetter who made corrections and pulled "reproduction proofs" which were returned to Merrill's editors for further scrutiny; that the reproduction proofs, artwork, and photographs were then sent to a printer; that the printer photographed the material and used the resulting negative to make a printing plate which he then used to print the sheets which would become the pages of the textbooks; and that these sheets were then sent by Merrill to a binder to be collated and bound into textbooks.

Merrill raises five assignments of error:

"I. The Board of Tax Appeals has erred in the affirmance of the Tax Commissioner's assessment of sales and use tax upon transactions which did not constitute retail sales or use within the purview of §§ 5739.01 and 5741.02(C)(2), Revised Code.

"II. The Board of Tax Appeals has erred in the affirmance of the Tax Commissioner's assessment of sales and use tax upon the purchase and use of composition paper, line drawings, art work, color photography, typesetting, reproduction proofs, plates, prints, illustrations, film, color separations, negatives and positives, and other similar items, the purpose of the appellant being to use or consume such items in the production and preparation in suitable condition for market and sale of printed or other productions or reproductions of written or graphic matter as excepted from the definition of sales or use subject to the assessment of tax by virtue of §§ 4739.01(E)(8) [*sic*] and 5741.02(C)(2), Revised Code.

"III. The Board of Tax Appeals has erred in the affirmance of the Tax Commissioner's assessment of sales and use tax upon charges for plates used in the production of printed matter which were in the exclusive possession of printers and used in the production of such printed matter. Such transactions did not constitute a retail sale or use within the purview of §§ 5739.01(B) and 5741.02(C)(2), Revised Code; and the use of such plates is within the exception from the definition of sales or use sub-

ject to the assessment of tax by virtue of §§ 5739.01(E)(8) and 5741.02(C)(2), Revised Code.

"IV. The Board of Tax Appeals has erred in its construction of the amendment of § 5739.01(E), Revised Code, by the General Assembly in its adoption of Amended Senate Bill No. 161, effective November 21, 1973, providing a specific exception to the definition of retail sale and sales at retail for sales in which the purpose of the consumer is:

" [']To use or consume the thing transferred in the production and preparation in suitable condition for market and sale of printed, imprinted, overprinted, lithographic, multilithic, blueprinted, photostatic, or other production or reproductions of written or graphic matter['];

"which exception is applicable to the transactions erroneously assessed by the Tax Commissioner in the captioned matter.

"V. The Board of Tax Appeals has erred in the affirmance of the Tax Commissioner's assessment upon the purchase and use of typesetting, reproduction proofs, plates, prints, color separations, negatives and positives, and other similar items which the Appellant has placed in possession of printers for their exclusive use in the production and preparation of printed or other productions or reproductions of graphic or written matter pursuant to an agreement supported by mutual consideration between Appellant and said printers; and such transactions are excepted from the imposition of sales and use taxes as purchases for resale by virtue of §§ 5739.01(E)(1) and 5741.02(C)(2), Revised Code."

We will consider the first, second, and fourth assignments of error together, as they are interrelated.

Pursuant to R.C. 5739.02, an excise ("sales") tax is levied on each retail sale made in the state. A "use" tax is im-posed by R.C. 5741.02. If acquisition of an item is exempt from sales tax, it is also exempt from use tax. R.C. 5741.02 (C)(2). R.C. 5739.01(E) provides, in pertinent part, that:

" 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

"* * *

"(2) To incorporate the thing transferred as a material or a part, into tangible personal property to be produced for sale by manufacturing, assembling, processing, or refining or to use or consume the thing transferred directly in the production of tangible personal property, except printed, imprinted, overprinted, lithographic, multilithic, blueprinted, photostatic, or other productions or reproductions of written or graphic matter, for sale by manufacturing, processing * * *.

"* * *

"(8) To use or consume the thing transferred in the production and preparation in suitable condition for market and sale of printed, imprinted, overprinted, lithographic, multilithic, blueprinted, photostatic, or other productions or reproductions of written or graphic matter;"

Merrill's contention before the BTA was that the quoted portions of R.C. 5739.01(E), referring to printed matter, were the result of an amendment by which the General Assembly acted to specifically exempt the transactions at issue in this case from taxation. The BTA rejected that argument, holding instead that:

"Appellant contends that R.C. 5739.01 was amended by 1973 Amended Senate Bill No. 161 relative to sales tax exemptions for the production and sale of printed matter, * * * which * * * modified Subdivision (E)(2) and added Subdivision * * * (E)(8).

"Appellant further contends that the purpose of the amendment * * * was to effectuate an exemption that was

held, in *R. R. Donnelley & Sons Co.* v. *Porterfield* (1972), 30 Ohio St. 2d [219,] 223 [59 O.O.2d 260], not to exist under Subdivision (E)(2) of R.C. 5739.01, as it previously read.

"* * *

"In the case of *R. R. Donnelley* v. *Porterfield* * * *, appellant was a printing company and the case involved the interpretation and application of former R.C. 5739.01(E)(2). The Court's opinion states, in part:

" '* * *

" '* * * [W]e must reject appellant's arguments that the manufacturing and processing exceptions of R.C. 5739.01(E)(2) relieve from taxation the purchase by a manufacturer of *all* tangible personal property necessarily utilized in successive steps leading to the ultimate transformation or conversion of materials or things into different state or form. Essentially the argument of appellant is that the "integrated plant" test, * * * should be applied to the printing business. We reject this argument.

" 'Instead, we conclude that the only tangible personal property purchased for use in the printing business which is excepted from sales tax by virtue of that portion of R.C. 5739.01 (E)(2), excepting from such taxation property used or consumed "directly in the production of tangible personal property for sale by manufacturing [or] processing," is that property which is used directly in the transformation or conversion of other tangible personal property marketable products, and does not include tangible personal property used or consumed prior to such transformation or conversion, even where essential to the operation of an "integrated plant." '

"* * *

"Appellant correctly observes that [subdivision (E)(8)] * * * does not include the word 'directly'; that is to say, does not read, '*directly* in the production

and preparation in suitable condition for market and sale.' However, such use or consuption [*sic*] of the thing transferred, for purposes of exception from taxation, must be used or consumed [']in the *production and preparation * * * for market and sale.*' It does not read 'used or consumed in preparation for the production * * *.' It would appear that only those items used or consumed in the actual production of the book or publication, itself, would qualify for exception from taxation, under the express terms of R.C. 5739.01(E)(8).

"Appellant contends, however, that all tangible personal property used or consumed in the process of selecting and preparing the materials which are to be ultimately printed in a book or publication also qualify for the exception from taxation, under the terms of R.C. 5739.01(E)(8). The subject items here are used or consumed before the actual production of the end product for sale begins.

"* * *

"In effect, Appellant contends that R.C. 5739.01(E)(8) should be interpreted so as to permit the application of the 'integrated plant' theory or test to the printing and publication industries * * *.

"* * * It does not follow, however, that the lack of the word 'directly' in [the] Subdivision requires an interpretation so as to be applicable to any tangible personal property used or consumed that was indispensable to the creation of the materials that will be printed into a publication that can be marketed and sold.

"The words 'and preparation in suitable condition for market and sale' indicate a reference to the collation and binding of the printed materials process in forming the book or publication that is to be marketed and sold, and not to materials used or consumed in the process of preparing selected material into a suitable format ready to be used in the

process of making the requisite printing plates to be used, in conjunction with the printing presses, to produce the pages that will become a part of the finished product marketed and sold.

"The subject items here were used or consumed prior to any production (printing) activity and not used during or in the actual printing of the publication."

It is apparent that the BTA concluded that the act of the General Assembly in amending the statute to provide a specific exemption for the printing industry·had no effect on the holding of *R. R. Donnelley & Sons Co.* v. *Porterfield* (1972), 30 Ohio St. 2d 219 [59 O.O.2d 260].

Such a position is untenable. It requires no divination to ascertain that the 1973 amendment (Am. S.B. No. 161) was a direct legislative response to the holding of *R. R. Donnelley & Sons Co., supra,* and was intended by the General Assembly to provide the printing and publication industries with a broader exemption than the "direct use" exemption found in subdivision (E)(2) of the statute. By removing the printing and publication industries from subdivision (E)(2), by eliminating the word "directly" from the industries' exemption in subdivision (E)(8), and by there utilizing the term "production and *preparation* in suitable condition for market and sale," the General Assembly eliminated the requirement that, in order for the materials to be exempt, they must be utilized in the final, ultimate stage of the production process.

Accordingly, the exemption should have been applied to exempt from taxation all items of tangible personal property purchased by Merrill with the purpose of necessarily using or consuming them in the successive steps that comprised the process of production and preparation of printed matter (textbooks) in a suitable condition for market and sale. These successive steps or stages of the process included preparation of copy, artwork and photographs, converting these items into type or printing plates, the actual printing or presswork, and collating and binding the printed sheets into textbooks. Because the items at issue were concededly used during the early stages of the process, they should have been exempt from taxation under R.C. 5739.01(E)(8).

Although the Tax Commissioner of Ohio seeks to draw a distinction between those publishers which perform in-house all the successive steps of the process, and those like Merrill which perform · some of the stages in-house and satisfy others by purchasing items from other sources, the General Assembly adopted no such distinction. Where items are prepared by outside sources pursuant to a contract with and under the direction of the publisher, and are purchased by the publisher with the purpose of using them in the production and preparation process, those items are used or consumed by the publisher within the contemplation of subdivision (E)(8), as surely as if they had been prepared in-house.

The first, second, and fourth assignments of error are sustained.

To the extent that the third assignment of error contends that the transaction involving the printing plates was not within the definition of a "sale" as contemplated by R.C. 5739.01(B), the assignment of error is overruled, as that issue was not raised before the BTA. To the extent that it is contended that the transaction was exempted by the provisions of R.C. 5739.01(E)(8), the assignment of error is sustained for the reasons stated above.

Because Merrill asserts its fifth assignment of error only in the event that "the Court does not find in favor of Appellant upon Assignments of Error I to IV," and the BTA did not address the issue raised by the assignment of error, the fifth assignment of error is overruled.

The first, second, and fourth assignments of error are sustained; the third assignment of error is sustained in part and overruled in part; the fifth assignment of error is overruled; and it is the decision of this court that the order of the BTA is unreasonable or unlawful and the same is reversed and vacated.

*Order reversed and vacated.*

STRAUSBAUGH and REILLY, JJ., concur.